UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT J. BOWMAN,

        Plaintiff,

                                        File No.  5:06-CV-87

v.

                                        HON. ROBERT HOLMES BELL

GRUEL MILLS NIMS & PYLMAN, LLP,

        Defendant.

_____/

## O P I N I O N

This matter is before the Court on Defendant Gruel Mills Nims & Plyman's ("Gruel Mills") motion for summary judgment.  (Gruel Mills' Mot. for Summ. J., Docket #27.) Plaintiff Robert J. Bowman alleges that Gruel Mills committed legal malpractice in its representation of him in a claim for wrongful denial of retirement benefits against his former employer, Knape & Vogt Manufacturing Company ("Knape & Vogt").  Mr. Bowman alleges that Gruel Mills failed to appreciate how the federal Employee Retirement Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461, implicated his claim.  Gruel Mills contends that summary judgment is proper because: (i) the alleged malpractice is protected by the attorney judgment rule and (ii) Mr. Bowman cannot establish that the alleged malpractice was the proximate cause of the unfavorable result in the underlying litigation.  For the reasons that follow, the Court grants summary judgment in part as to proximate cause and denies summary judgment in part as to the attorney judgment rule.

## I.

This case arises out of litigation between Mr. Bowman and Knape & Vogt. Knape & Vogt is a Grand Rapids based manufacturer. In 1969, Mr. Bowman became a member of Knape & Vogt's board of directors. In 1981, Knape & Vogt adopted a Supplemental Executive Retirement Plan ("SERP"). (SERP, Def.'s Br. in Supp., Docket #29, Ex. 3.) At the time the SERP was adopted, Mr. Bowman was chairman of the committee on the board of directors who approved the SERP. (Bowman Dep. 49:4-8, Pl.'s Br. in Opp'n, Docket #40, Ex. 1; Knape Dep. 116:3-13, Pl.'s Br. in Opp'n, Ex. 2.) Under Knape & Vogt's SERP eligible employees received a maximum annual retirement benefit of 60 percent of their average annual earnings. Eligible employees accrued this benefit under the plan after 10 years of service.

In 1985, Knape & Vogt's President, Ray Knape, sought to have Mr. Bowman join Knape & Vogt as Vice-President of Corporate Development. At that time Mr. Bowman had his own consulting business, Actuarial Benefits Inc.[1] Becoming Vice-President of Corporate Development for Knape & Vogt required that Mr. Bowman close his consulting business. As part of the compensation package Knape & Vogt offered to Mr. Bowman, he was to be designated as a participant in the SERP. There were also discussions between Mr. Knape

---

[1]Mr. Bowman had two corporations: Robert Bowman Company and Actuarial Benefits Inc. Mr. Bowman's actual employer was Actuarial Benefits Inc. (Bowman Dep. 105:8-22.) Mr. Bowman's ownership of Actuarial Benefits Inc. was through the Robert Bowman Company. (Bowman Dep. 105:10-22.)

and Mr. Bowman about the calculation of Mr. Bowman's "credited service" under the SERP.[2]
The parties offer divergent accounts of the discussions about "credited service."
Mr. Bowman alleges that he and Mr. Knape agreed that he would be entitled to the full
retirement benefit immediately upon being designated a participant.  Mr. Bowman further
alleges that Mr. Knape was concerned about the accounting implications of the benefit
accruing to Mr. Bowman in a single year, so Mr. Bowman agreed to serve for a minimum of
five years.  This would permit the company to expense the cost of Mr. Bowman's SERP
benefit over five years.

In June of 1985, Mr. Bowman accepted the offer to become Knape & Vogt's Vice-
President of Corporate Development.  Mr. Bowman served in that capacity until July 11,
1992, when after suffering a serious heart attack, he resigned as Vice-President of Corporate
Development.  On July 17, 1992, the board of directors voted to involuntarily terminate
Mr. Bowman as vice-chairman of the board of directors and as a member of the board of
directors.

After his termination, Mr. Bowman received an annual retirement benefit under the
SERP of 42 percent of his annual compensation.  The 42 percent was based on Mr. Bowman
having seven years of "credited service," thus entitling him to 70 percent of the maximum
annual benefit.  Mr. Bowman believed he was entitled to the maximum annual benefit under

---

[2]The SERP defines "credited service" as "years and completed months of service with the Company, including any approved leaves of absence and including any other periods as may be designated Credited Service by the Committee."  (SERP, art. II.H.)

3

the SERP, 60 percent of his annual compensation, based on the compensation package he was offered when he became Knape & Vogt's Vice-President of Corporate Development. Mr. Bowman raised this issue with Mr. Knape and Mr. Knape presented Mr. Bowman's position to the SERP's Administrative Committee.[3]   The Administrative Committee determined that "credited service" did not include Mr. Bowman's time as member of the board of directors and therefore Mr. Bowman had seven years of "credited service." (Knape Dep. 92:8-25.)

By February of 1993, Mr. Bowman retained Grant Gruel of Gruel Mills to represent him with regard to his claim for the maximum annual retirement benefit under the SERP. In April of 1993, Mr. Gruel sought the advice of an employee benefits attorney, Robert B. Stevenson. Mr. Stevenson advised Mr. Gruel on how ERISA would implicate Mr. Bowman's claim and that Mr. Bowman's claim would confront "a number of significant obstacles."[4] (Oct. 6, 1993 Mem. from Robert Stevenson to Grant Gruel, Pl.'s Br. in Opp'n, Ex. 8.)  On February 18, 1997, Mr. Gruel commenced a civil action in Kent County Circuit Court against

---

[3]The SERP's Administrative Committee was comprised "of three or more members who are appointed by the Board of Directors of the Company for the purpose of administering [the SERP]." (SERP, art. II.F.) The SERP further provided that "[a] majority of the members of the Committee shall not be eligible to participate in the Plan." (*Id.*)

[4]Mr. Stevenson rendered his original opinion on October 6, 1993. Mr. Gruel then provided Mr. Stevenson some additional information from Mr. Bowman. On October 26, 1993, Mr. Stevenson advised Mr. Gruel that "Mr. Bowman's additional comments present added difficulties for his case, if anything." (Oct. 26, 1993 Letter from Robert Stevenson to Grant Gruel, Def.'s Br. in Supp., Ex. 4.)

Knape & Vogt on behalf of Mr. Bowman.[5]  (Compl. in *Bowman v. Knape & Vogt*, Pl.'s Br. in Opp'n, Ex. 9.)  The complaint filed by Mr. Gruel alleged a single claim based on a breach of contract theory and did not mention ERISA.  (*Id.*)  On June 4, 1999, on the eve of trial, Knape & Vogt filed a supplemental trial brief contending that the SERP was governed by ERISA and that therefore the state-law contract claim was preempted by ERISA.  The trial was then adjourned until January of 2000.

On January 19, 2000, a bench trial was commenced before a Kent County Circuit Judge.  Mr. Gruel argued on behalf of Mr. Bowman that the decision of the SERP's Administrative Committee was arbitrary and capricious under ERISA.  The Kent County Circuit Judge found in favor of Knape & Vogt as to the Administrate Committee's determination not being arbitrary and capricious, but found in favor of Mr. Bowman based on a promissory estoppel theory under ERISA.  The Kent County Circuit Judge concluded that Mr. Bowman was entitled to the maximum annual retirement benefit under the SERP and that this entitlement was retroactive.  On June 14, 2002, the Michigan Court of Appeals reversed the circuit court's decision, finding that the circuit court did not have subject-matter jurisdiction under ERISA.  *Bowman v. Knape & Vogt Mfr. Co.*, No. 227190, 2002 WL 1308641, at *5 (Mich. Ct. App. June 14, 2002).  The Michigan Court of Appeals determined

_____

[5]The delay between Mr. Bowman's resignation and the filing of the lawsuit against Knape & Vogt was due to the pendency of a separate action against Mr. Bowman by a Knape & Vogt subsidiary, Feeney Manufacturing.  Mr. Gruel, who also represented Mr. Bowman in the Feeney lawsuit, determined that it would be best to await the resolution of the Feeney case before initiating a lawsuit for benefits under the SERP.  (Bowman Dep. 68:12-69:25.)

that state courts only have jurisdiction for claims brought under 29 U.S.C. § 1132(a)(1)(B) and a promissory estoppel claim could only be brought under § 1132(a)(3). *Id.* at *3-5. The Michigan Supreme Court denied Mr. Bowman leave to appeal. *Bowman v. Knape & Vogt Mfr. Co.*, 468 Mich. 905, 905, 661 N.W.2d 581 (2003).

On July 19, 2002, Mr. Gruel filed a new employee benefits lawsuit on behalf of Mr. Bowman in the U.S. District Court for the Western District of Michigan. The federal lawsuit acknowledged that Mr. Bowman's claim was governed by ERISA and asserted estoppel and breach of fiduciary duty claims. On November 18, 2002, Knape & Vogt filed a motion to dismiss contending that Mr. Bowman's claim was barred by the applicable statute of limitations. On September 29, 2003, Judge McKeague granted Knape & Vogt's motion to dismiss based on the statute of limitations.[6] On January 13, 2005, the Sixth Circuit affirmed Judge McKeague's decision. *Bowman v. Knape & Vogt Mfr. Co.*, No. 03-2406, 2005 U.S. App. LEXIS 636, at *2 (6th Cir. Jan. 13, 2005) (unpublished).

Mr. Bowman died on January 18, 2007, during the pendency of this motion. Mr. Gruel died in 2004, prior to the filing of this lawsuit.

## II.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to

---

[6]Though Knape & Vogt's motion was drafted as a motion to dismiss, it was considered by the court as a motion for summary judgment. *Bowman v. Knape & Vogt Mfr. Co.*, No. 1:02-CV-523, at 1 (W.D. Mich. Sept. 29, 2003) (unpublished).

6

judgment as a matter of law.  In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If Defendant carries its burden of showing there is an absence of evidence to support a claim, then Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories and admissions on file, that there is a genuine issue of material fact for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party.  *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587).  Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986).  The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff.  *Id.*;  *see generally*, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

When the moving party has the burden of proof, however, a somewhat different standard applies.  "'[W]here the moving party has the burden – the plaintiff on a claim for relief or defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.'"  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer,

*Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  "[I]f the moving party also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'"  *Id.* (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)). Thus, "[s]ummary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## III.

Under Michigan law, the elements of an action for legal malpractice are:

"(1) the existence of an attorney-client relationship;
(2) negligence in the legal representation of the plaintiff;
(3) that the negligence was a proximate cause of an injury; and
(4) the fact and extent of the injury alleged."

*Simko v. Blake*, 448 Mich. 648, 655, 532 N.W.2d 842 ( 1995) (quoting *Coleman v. Gurwin*, 443 Mich 59, 63, 503 N.W.2d 435 (1993)).  The plaintiff has the burden of establishing these four elements.  *Id.*  Michigan law also recognizes an affirmative defense known as the attorney judgment rule.[7]  The attorney judgment rules provides that "'an attorney is obligated

---

[7]The recent decision of the Michigan Supreme Court to request additional briefing on the attorney judgment rule in *Grace v. Leitman*, 2007 Mich. LEXIS 689, at *1, No. 131035 (Mich. Mar. 30, 2007), does not alter the current law on the attorney judgment rule.

to use reasonable skill, care, discretion and judgment in representing a client' . . . [but] is never bound to exercise extraordinary diligence, or act beyond the knowledge, skill, and ability ordinarily possessed by members of the legal profession." *Id.* at 656 (quoting *Lipton v. Boesky*, 110 Mich. App. 589, 594, 313 N.W.2d 163 (1981)); *accord Estate of Mitchell v. Dougherty*, 249 Mich. App. 668, 679, 644 N.W.2d 391 (2002).  As the attorney judgment rule is an affirmative defense, Defendant bears the burden of persuasion for it.  *See Palenkas v. Beaumont Hosp.*, 432 Mich. 527, 548, 443 N.W.2d 354 (1989); *Badalamenti v. Sheldon L. Miller & Assoc., P.C.*, No. 254790, 2005 Mich. App. LEXIS 2840, at *3-4 (Mich. Ct. App. Nov. 17, 2005) (per curiam) (unpublished).

### A.  Attorney Judgment Rule

Gruel Mills contends that the decisions of Mr. Gruel in the underlying litigation are within the attorney judgment rule and therefore Gruel Mills is entitled to summary judgment. Gruel Mills argues that Mr. Gruel's decision to file a lawsuit in state court predicated on state-law was a strategic decision that represents "a good exercise of attorney judgment." (Def.'s Br. in Supp. 14.)  Gruel Mills notes that Mr. Gruel sought the advice of Mr. Stevenson and so Mr. Gruel was aware of how ERISA implicated Mr. Bowman's claim.  Gruel Mills further argues that Mr. Gruel decided to file a state-law action in state court because an ERISA claim would have been unlikely to succeed.

Mr. Bowman responds that Mr. Gruel's decision is not protected by the attorney judgment rule for two reasons.  First, Mr. Bowman argues that Mr. Gruel's strategy was not

"consistent with prevailing Michigan law." *Simko*, 448 Mich. at 656.  Mr. Bowman contends that it was not permissible for Mr. Gruel to disregard ERISA and plead a state-law breach of contract claim.  Second, Mr. Bowman argues that Mr. Gruel failed to advise Mr. Bowman that he did not intend to raise ERISA.  Mr. Bowman argues that in order to be protected by the attorney judgment rule Mr. Gruel must have advised him of the intended strategy.

"An attorney has the duty to fashion such a strategy so that it is consistent with prevailing Michigan law." *Id.*  Based on Mr. Stevenson's advice that an ERISA claim would have confronted "a number of significant obstacles," Mr. Gruel opted for a strategy that had substantial risks, but avoided the "significant obstacles" identified by Mr. Stevenson.  While it is often best to directly confront such "significant obstacles," the depositions and documents offered by Gruel Mills require the conclusion that no reasonable trier of fact could conclude that Mr. Gruel's strategic decision was inconsistent with prevailing Michigan law. The decision of the Michigan of the Court of Appeals in the underlying case is not to the contrary.  The Michigan Court of Appeals did not hold that the Kent County Circuit Court lacked subject-matter jurisdiction over the breach of contract claim or the wrongful denial of benefits claim.  Rather, the court held that the Kent County Circuit Court lacked subject-matter jurisdiction over the only claim on which the circuit court had found for Mr. Bowman, the estoppel claim.[8]  *Bowman*, 2002 WL 1308641, at *2.

---

[8]After Knape & Vogt filed the supplemental trial brief asserting the applicability of ERISA, Mr. Gruel argued that Knape & Vogt had wrongfully denied benefits under 29 U.S.C. § 1132(a)(1)(B).  The estoppel theory that the circuit court adopted in finding in favor of Mr. Bowman had not been presented by Mr. Bowman. It was this theory for which the Michigan Court of Appeals found subject-matter jurisdiction lacking.

The Court next considers Mr. Bowman's contention that Mr. Gruel failed to advise him that he did not intend to raise ERISA.  Gruel Mills makes two contentions about the obligation to advise Mr. Bowman.  First, Gruel Mills contends that the attorney judgment rule protects Mr. Gruel's conduct even if he did not advise Mr. Bowman.  Second, Gruel Mills contends that Mr. Gruel did advise Mr. Bowman.

On the question of whether Gruel Mills was required to advise Mr. Bowman, Mr. Bowman directs the Court to the Michigan Rules of Professional Conduct.  Rule 1.4 provides that:

> (a) A lawyer shall keep a client reasonably informed about the status of a matter and comply promptly with reasonable requests for information. . . .
> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

MICH. R. PROF'L CONDUCT 1.4.  The comments to Rule 1.4 provide that:

> In litigation, a lawyer should explain the general strategy and prospects of success and ordinarily should consult the client on tactics that might injure or coerce others.  On the other hand, a lawyer ordinarily cannot be expected to describe trial or negotiation strategy in detail.  The guiding principle is that the lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client's best interests and consistent with the client's overall requirements as to the character of representation.

MICH. R. PROF'L CONDUCT 1.4, cmt.  Rule 1.4, when read in consideration of the comment, clearly requires a lawyer to discuss key strategic decisions with the client.  This obligation is particularly important when those decisions involve substantial risk for the client (e.g., that it may not be possible to raise the forgone theory later because of the statute of limitations).

11

Gruel Mills does not dispute the requirements imposed by the Michigan Rules of Professional Conduct, however, Gruel Mills contends that violations of the Michigan Rules of Professional Conduct do not give rise to a cause of action. In support of this Gruel Mills directs the Court to Rule 1.0(b), which provides that:

> Failure to comply with an obligation or prohibition imposed by a rule is a basis for invoking the disciplinary process. The rules do not, however, give rise to a cause of action for enforcement of a rule or for damages caused by failure to comply with an obligation or prohibition imposed by a rule. . . .

MICH. R. PROF'L CONDUCT 1.0(b). Gruel Mills also directs the Court to several cases from the Michigan Court of Appeals that reiterate the principle of Rule 1.0(b). *E.g.*, *Watts v. Polaczyk*, 242 Mich. App. 600, 607 n.1, 619 N.W.2d 714 (2000). Neither the cases cited by Gruel Mills, nor Rule 1.0(b), provide any guidance as to the interaction between the attorney judgment rule and the Michigan Rules of Professional Conduct.

The attorney judgment rule protects decisions if the attorney acted with "reasonable skill, care, discretion and judgment . . ." *Simko*, 448 Mich. at 656. Gruel Mills has not offered an argument for why an attorney exercising reasonable skill and care would not comply with the Michigan Rules of Professional Conduct. In *Simko* the Michigan Supreme Court cited the Michigan Rules of Professional Conduct in support of the proposition that an attorney is obligated to exercise reasonable skill and care. *Id.* at 656 (citing MICH. R. PROF'L CONDUCT 1.0-1.3.) Thus, limiting the attorney judgment rule to situations in which an attorney has complied with the Michigan Rules of Professional Conduct is consistent with

the attorney judgment rule as set-forth in *Simko*.[9]  This is consistent with Rule 1.0(b) because the attorney judgment rule is an affirmative defense, not a cause of action.  A finding that the attorney judgment rule is unavailable does not give rise to a cause of action, as the plaintiff is still required to establish the four elements necessary for legal malpractice.  Therefore, in order to grant summary judgment to Gruel Mills on the attorney judgment rule the Court must find that no reasonable trier of fact could find that Mr. Gruel failed to advise Mr. Bowman that he did not intend to raise ERISA.

Gruel Mills first contends that Mr. Bowman's awareness of the consultation with Mr. Stevenson demonstrates that Mr. Bowman was aware of Mr. Gruel's intent not to raise ERISA.  At his deposition Mr. Bowman could not recall the consultation with Mr. Stevenson, but he acknowledged that various documents indicated that he was aware of the consultation at the time.  (Bowman Dep. 63:9-64:11.)  Mr. Bowman being aware that Mr. Gruel had consulted with Mr. Stevenson about ERISA does not indicate that Mr. Gruel advised Mr. Bowman that he was not going to raise ERISA in the lawsuit.  Contrary to Gruel Mills'

---

[9]Where the Michigan Supreme Court has not addressed a particular legal issue, the Court must endeavor to ascertain what the Michigan Supreme Court would decide if faced with this issue.  *Ziegler v. IBP Hog Market Inc.*, 249 F.3d 509, 517 (6th Cir. 2001)  The Court must determine the state law from all relevant data, including the state's appellate court decisions, the dicta of the Michigan Supreme Court, restatements of law, law review commentaries and the majority rule among other states.  *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995).  Thus, the Court must consider these sources to determine the role of the Michigan Rules of Professional Conduct under the attorney judgment rule.

contention, the consultation with Mr. Stevenson arguably supports the conclusion that Mr. Gruel *was* going to pursue the case as an ERISA case.  Gruel Mills has not offered any explanation for why a client would infer from consultations with an ERISA expert that ERISA was not going to be raised at trial.

Mr. Bowman directs the Court to an affidavit that he signed as part of the underlying federal court case.  (Bowman Aff., Pl.'s Br. in Opp'n, Ex. 10.)   The affidavit does not indicate when Mr. Bowman first learned of the applicability of ERISA to his claim.  Instead, the affidavit identifies when Mr. Bowman first learned "that Knape & Vogt claimed the SERP was in any way governed or controlled by ERISA . . . ."  (Bowman Aff. ¶ 4.)  Though after the issue was raised by Knape & Vogt Mr. Bowman was likely aware of Mr. Gruel's strategy with respect to ERISA, that knowledge does not indicate whether Mr. Gruel had discussed the issue with Mr. Bowman prior to it being raised by Knape & Vogt.

Mr. Bowman also directs the Court to the deposition of Thomas R. Behm, who is a partner at Gruel Mills.  (Behm Dep., Pl.'s Br. in Opp'n, Ex. 3.)  Mr. Behm worked on Mr. Bowman's case against Knape & Vogt.  Mr. Bowman notes that Mr. Behm testified that he did not discuss trial strategy with Mr. Bowman prior to July of 2002.  (Behm Dep. 11:5-8.) The significance of that testimony is limited, however, as Mr. Behm did not become involved in Mr. Bowman's case until after a complaint had been filed in federal court.  (Behm Dep. 16:24-17:3.)  Mr. Bowman's own testimony about whether Mr. Gruel had ever explained his trial strategy is not definitive.  (Bowman Dep. 142:18-143:22, 144:3-12.)  Mr. Bowman's

testimony is, however, certainly susceptible to being interpreted to mean that Mr. Gruel had never explain his trial strategy to Mr. Bowman.

A reasonable trier of fact could conclude that Mr. Gruel failed to advise Mr. Bowman that he did not intend to raise ERISA. The only evidence Gruel Mills has offered in support of its position is the consultation between Mr. Gruel and Mr. Stevenson. As the Court noted earlier, how that consultation implicates Mr. Bowman's knowledge is susceptible of multiple interpretations. The evidence offered by Mr. Bowman further supports the conclusion that taken as whole the evidence is susceptible of multiple interpretations. As the evidence is susceptible of multiple interpretations, Gruel Mills is not entitled to summary judgment as to the attorney judgment rule.

### B. Proximate Cause

To prove proximate cause in a legal malpractice action, a plaintiff must prove: (i) cause in fact and (ii) legal cause. *Charles Reinhart Co. v. Winiemko*, 444 Mich. 579, 585-86, 513 N.W.2d 773 (1994). To prove cause in fact, "a plaintiff 'must show that but for the attorney's alleged malpractice, he would have been successful in the underlying suit.'" *Charles Reinhart Co.*, 444 Mich. at 586 (quoting *Gurwin*, 443 Mich. at 63) (footnote omitted). Gruel Mills argues Mr. Bowman cannot establish proximate cause and therefore it is entitled to summary judgment. Mr. Bowman contends that but for Mr. Gruel's alleged malpractice, he would have prevailed on one of the available ERISA claims. Mr. Bowman argues that there are three ERISA theories on which he could have prevailed: (i) that the

15

Administrative Committee's decision was arbitrary and capricious, (ii) that Knape & Vogt was promissorily estopped, and (iii) that Ray Knape breached his fiduciary duty.[10]

## 1. Arbitrary and Capricious

ERISA § 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B), authorizes a participant in a covered plan to bring a suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C.S. § 1132(a)(1)(B) (LexisNexis 2007). "[W]hen a plan grants the administrator discretionary authority to interpret the terms of the plan and to determine benefits, courts will only reverse an administrator's determination if it is 'arbitrary and capricious.'" *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111-15 (1989)). Article VII of the SERP grants the Administrative Committee authority to "decide all questions regarding eligibility for benefits hereunder and the amount of such benefits." (SERP, art. VII.) Thus, for claims brought under § 1132(a)(1)(B), the decision of the Administrative Committee is subject to the "arbitrary and capricious" standard of review. The Administrative Committee's decision will not be deemed "arbitrary and capricious" if the decision was "'rational in light

---

[10]As the Court finds that Gruel Mills is entitled to summary judgment as to all three of the available ERISA theories, the Court need not consider whether all three of these theories could have been presented in the underlying lawsuit. *See Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 839-40 (6th Cir. 2007) ("[U]nder some circumstances an ERISA plaintiff may simultaneously bring claims under both § 1132(a)(1)(B) and § 1132(a)(3).").

of the plan's provisions.'"  *Smith v. Cont'l Cas. Co.*, 450 F.3d 253, 260 (6th Cir. 2006) (quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996)).

Mr. Bowman argues that a different standard of review should be applied because the Administrative Committee had a conflict of interest.  "The standard of review is not altered to a less deferential standard when the benefits administrator is operating under a conflict of interest." *Smith*, 450 F.3d at 260 (citing *Calvert v. Firstar Finance Inc.*, 409 F.3d 286, 293 (6th Cir. 2005)).  "Instead, . . . the standard remains unchanged and the conflict of interest is to be considered in applying that standard." *Id.* (quoting *Calvert*, 409 F.3d at 293).

Mr. Bowman alleges three conflicts of interest. First, Mr. Bowman alleges that the Administrative Committee had a conflict of interest because the SERP was self-funded. Second, Mr. Bowman alleges that the members of the Administrative Committee who denied him full retirement benefits under the SERP were the same individuals who had sought to deny him an increase in salary prior to his retirement.  Third, Mr. Bowman alleges that the members of the Administrative Committee who denied him full retirement benefits were upset with him because of the events underlying the lawsuit that had been brought against him by Feeney Manufacturing.

The decision of the Administrative Committee that is at issue, is the Committee's decision that Mr. Bowman's "credited service" only includes the time he served as Vice-President of Corporate Development.  The plan defines "participant" as: "any employee who

meets the eligibility requirements of Article III and are designated as Participants by the Board of Directors." (SERP, art. II.H.)  Article III of the SERP provides that:

> Officers and other key employees of the Company are eligible to participate in this Plan, but become Participants only if they are specifically designated as Participants, either directly by the Board of Directors or in accordance with procedures and rules adopted by the Board of Directors for this purpose.

(SERP, art. III.)  These two provisions both limit the plan to employees because only employees can be "participants."  This limitation supports the conclusion that "credited service" under Article II.H is limited to a person's time as an employee because the question of "credited service" can only arise for employees.

The Court must also consider the conflicts of interest in evaluating the Administrative Committee's decision.  The role of the conflicts of interest in the Committee's decision is belied by two other undisputed facts.  First, Mr. Bowman had been receiving annual reports indicating that his "credited service" would only include his time as Vice-President of Corporate Development since 1986.  (Bowman Dep. 146:6-25.)  So Mr. Bowman's benefits under the SERP had been administered consistent with the Committee's decision for several years before either the Keeney conflict or the pay raise conflict arose.  Second, in not including Mr. Bowman's time as director as part of his "credited service" Mr. Bowman was treated the same as all other SERP participants had been treated.  (Knape Dep. 114:2-14.)  In consideration of these undisputed facts, the Committee's decision was rational in light of the plan's provisions.

18

Mr. Bowman also argues that the Committee's decision is inconsistent with Knape & Vogt having requested that a consulting firm calculate Mr. Bowman's benefits at both the 70 percent level and the full benefit level. (Letter from Cindy Cairo to Richard Simkins, Pl.'s Br. in Opp'n, Ex. 21.) Mr. Bowman contends that the request for the full benefit calculation indicates that Knape & Vogt thought it might be obligated to pay full benefits. The only evidence as to the decision to request both calculations comes from the testimony of Mr. Knape. Mr. Knape testified that he likely requested the calculations. (Knape Dep. 79:2-80:3.) Mr. Knape did not recall if he had requested the accounting firm to calculate Mr. Bowman's benefit at the full benefit level. (*Id*. at 83:3-5.) Separate from who made the request, there are handwritten notes on the letter indicating that the accounting firm believed that granting Mr. Bowman full benefits would require amending the SERP or a resolution from the board of directors. (Letter from Cindy Cairo to Richard Simkins 2; Knape Dep. 82:14-83:2.) Though both calculations were made by the accounting firm, Mr. Bowman has not presented any evidence to suggest that both calculations were requested because someone at Knape & Vogt believed that Mr. Bowman was entitled to full benefits under the SERP. In consideration of that, the fact that both calculations were done does not implicate the Administrative Committee's decision.

The Administrative Committee's decision evaluated in consideration of the conflicts of interest was not arbitrary and capricious.

19

### 2. Promissory Estoppel

As a preliminary matter, a promissory estoppel claim is only available if the plan provision at issue is ambiguous. *Sprague v. GMC*, 133 F.3d 388, 404 (6th Cir. 1998).  The elements of a promissory estoppel claim under ERISA are:

> (1) there must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

*Sprague*, 133 F.3d at 403 (citing *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991)).

In support of the plan provision being ambiguous, Mr. Bowman directs the Court to a report from the accounting firm calculating his benefits under the SERP at the 70 percent benefit level and the full benefit level.  (Letter from Cindy R. Cairo to Richard Simkins.)  As the Court's earlier analysis indicates, this letter does not indicate that the plan was ambiguous.  *See supra* Part III.B.1.  While not clearly suggesting that the plan was ambiguous, Mr. Knape testified that he at least thought that it was plausible to interpret the SERP to entitle Mr. Bowman to full benefits.  (Knape Dep. 40:2-18.).  As the issue is presented as part of this summary judgment motion, Mr. Knape's testimony sufficiently supports the existence of an ambiguity to permit consideration of the merits of a promissory estoppel claim.

Gruel Mills disputes that Mr. Bowman can prove all five elements, but focuses primarily on the first and fifth elements. The first element requires that "there must be conduct or language amounting to a representation of material fact . . . ." *Sprague*, 133 F.3d at 403. Mr. Bowman's contention is that it was represented to him that he would be entitled to full retirement benefits under the SERP upon being designated as a participant. Mr. Bowman's deposition testimony is that when he presented this view to Mr. Knape in 1985, Mr. Knape did not disagree with him. (Bowman Dep. 44:11-17, 49:9-51:9.) Mr. Bowman also testified that Mr. Knape never affirmatively indicated that he would be immediately entitled to full benefits under the SERP. (Bowman Dep. 54:22-55:5.) Mr. Knape testified that in 1985 he discussed the full retirement benefit with Mr. Bowman and that he agreed to present the issue to the board of directors, but the board of directors rejected Mr. Bowman's interpretation. (Knape Dep. 39:3-41:6.) Mr. Knape further testified that prior to Mr. Bowman becoming an employee of Knape & Vogt, he informed Mr. Bowman that the board had not agreed to his interpretation. (Knape Dep. 41:12-22, 45:20-46:2.) Mr. Knape also testified that prior to Mr. Bowman becoming an employee he never represented to him that his time as a director would count as "credited service." (*Id.* at 115:5-9.) Thus, at the time Mr. Bowman became an employee of Knape & Vogt, it had not been represented to him that his time as director would be counted as "credited service."

As evidence that his time as a director was to count as "credited service," Mr. Bowman also directs the Court to Knape & Vogt's purchase of a life insurance policy

shortly after he became an employee. (Bowman Dep. 53:23-54:21.) As to the only identified life insurance policy, however, Mr. Knape testified that is had no relationship to Mr. Bowman's SERP. (Knape Dep. 54:3-14.) Mr. Knape explained that Knape & Vogt obtained life insurance for all key employees to compensate the company for the loss of human capital that would occur if that employee died. (*Id.* at 52:10-55:1.) As Mr. Bowman's testimony was not linked to a particular insurance policy, it is insufficient to create a genuine question of material fact as to whether a material representation was made to Mr. Bowman. Therefore, there is not a genuine issue of material fact as to the inability of Mr. Bowman to prevail on the first element of a promissory estoppel claim.

The fifth element requires that Mr. Bowman must have "reasonably or justifiably rel[ied] on the representation to his detriment." *Sprague*, 133 F.3d at 403. The Court will assume for the purposes of analysis that there was a material representation, though the Court has concluded that there was not. As to the "reasonably or justifiably" relied requirement, the Court must consider Mr. Bowman's role as a member of the board of directors who originally approved the SERP. (Bowman Dep. 49:4-8; Knape Dep. 116:3-13.) Mr. Bowman testified that his becoming an employee of Knape & Vogt was conditioned on him being designated a participant in the SERP. (Bowman Dep. 51:15-19.) Given Mr. Bowman's familiarity with the SERP and his attention with regard to being designated a participant, it would have been unreasonable and unjustifiable for him to rely on any representations made by Mr. Knape. As a member of the committee who approved the SERP, Mr. Bowman knew,

22

or should have known, that only the Administrative Committee of the SERP had authority to determine benefits.  (*See* SERP, art. VII.)

There is no genuine issue of material fact as to the inability of Mr. Bowman to prove the first and fifth element of an ERISA promissory estoppel claim.  As Mr. Bowman cannot establish those elements of a promissory estoppel claim, Mr. Bowman cannot show that but for Mr. Gruel's alleged malpractice he would have prevailed on an ERISA promissory estoppel claim.

### 3.  Fiduciary Duty

Mr. Bowman claims that but for Mr. Gruel's alleged malpractice, a successful breach of fiduciary duty claim could have been asserted based on Mr. Knape's statements during the recruitment of Mr. Bowman.   Under ERISA, a fiduciary "may not materially mislead beneficiaries.  *Gregg v. Transp. Workers of Am. Int'l*, 343 F.3d 833, 844 (6th Cir. 2003) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 505 (1996)).  "'[A] misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision in pursuing . . . benefits to which she may be entitled." *Gregg*, 343 F.3d at 844 (citing *Krohn v. Huron Memorial Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999)) (omission in original).  Mr. Bowman has not identified any misrepresentation made by Mr. Knape.   Moreover, Mr. Knape testified that he advised Mr. Bowman prior to Mr. Bowman becoming an employee that the board had not agreed to Mr. Bowman's time as a director counting as "credited service."  Mr. Bowman has not offered any evidence as

to other material misrepresentation related to the SERP.  Therefore, there is no genuine issue of material fact as to the inability of Mr. Bowman to have prevailed on a breach of fiduciary duty claim.  As Mr. Bowman cannot establish the elements of a breach of a fiduciary duty claim, Mr. Bowman cannot show that but for Mr. Gruel's alleged malpractice he would have prevailed on an ERISA breach of fiduciary duty claim.

There is no genuine issue of material fact as to the inability of Mr. Bowman to have prevailed on any of the three ERISA claims that could have been asserted.  As Mr. Bowman cannot show that but for Mr. Gruel's alleged malpractice he would have prevailed on the underlying claim, Mr. Bowman cannot show Mr. Gruel's alleged malpractice was the proximate cause of his injury.  Therefore, Gruel Mills is entitled to summary judgment on the question of proximate cause.

## IV.

For the foregoing reasons, Gruel Mills' motion for summary judgment is granted in part as to proximate cause and denied in part as to the attorney judgment rule.  A judgment will be entered consistent with this opinion.


Date:  ___April 24, 2007___         /s/ Robert Holmes Bell
                                     _____
                                     ROBERT HOLMES BELL
                                     CHIEF UNITED STATES DISTRICT JUDGE